# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA SANFORD, PRESTON SMITH, AND PATRICIA SMITH, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MEMBERWORKS, INCORPORATED, a Delaware corporation, aka MWI Essentials, aka MWI Home and Garden, aka MWI Connections, aka MWI Valuemax, WEST CORPORATION, a Delaware corporation, WEST TELEMARKETING CORPORATION, a Delaware corporation,<br><br>Defendants. | CASE NO. 02CV0601-LAB (JFS)<br><br>**ORDER GRANTING IN PART PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE;**<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY;**<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION TO AMEND; AND**<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>[Docket nos. 121, 123, 127, 145] |

Defendant Memberworks, Incorporated ("MWI") is the sole remaining Defendant in this putative class action. MWI has moved to dismiss the First Amended Complaint ("FAC") (docket no. 113) in its entirety because, it argues, the named Plaintiffs have failed to state a claim and a class has not yet been certified. No motion for certification has been filed.

/ / /

/ / /

1    Plaintiffs have moved for leave to amend the FAC to withdraw the claims against Defendant West Corporation because their claims against West, which are proceeding in state court, have been settled.

Defendant MWI's argument is essentially that Plaintiffs have not stated a federal claim under either the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.* or the Federal Unordered Merchandise Statute, 39 U.S.C. § 3009.  Therefore, MWI argues, Plaintiffs' supplemental state-law claims, and the putative class action should both be dismissed.

## I.    Preliminary Matters

The named Plaintiffs in this action are Patricia Sanford, and Preston and Rita Smith.  While Plaintiffs clearly identified the Smiths as named Plaintiffs in the FAC (FAC at 5:1–3), the FAC's caption lists only Sanford.  *See* Fed. R. Civ. P. 10(a).  The FAC is therefore deemed amended to include Preston Smith and Rita Smith in the caption.

Plaintiffs have asked the Court to take judicial notice, pursuant to Fed. R. Evid. 201, of a class certification order in the state court action against West Corporation.  Defendant MWI, in opposition, disputes the relevance and admissibility of the class certification order.  As discussed below, the class certification order has some relevance to this action.  However, as MWI points out, while the existence of state court records may be judicially noticed, the findings of fact may not be. *Wyatt v. Terhune*, 315 F.3d 1108, 1114 & n. 5 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  MWI's request is **GRANTED** for the limited purpose of showing proceedings in the state court.  Besides the case pending in California state court, a class action is pending in Ohio state court and a global settlement in those cases has received preliminary approval. (Pls.' Mem. in Supp. of Mot. to Amend, at 1:2–8.)

## II.   Legal Standards

A motion to dismiss tests the legal sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars-Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted).  However, the Court is "not required to accept as true

conclusory allegations which are contradicted by documents referred to in the complaint," and does "not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citations and quotation marks omitted). A motion to dismiss also may be granted if an affirmative defense or other bar to relief, such as the statute of limitations, is apparent from the face of the complaint. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

### III. Discussion

Plaintiffs' claims arise out of transactions in which they were sold memberships in MWI's discount club. The following facts are taken from the FAC's allegations, which, as noted, the Court assumes to be true. Plaintiffs saw television advertisements for products, which they called to purchase. During the call, West subjected them to a sales pitch in which they were led to believe they were receiving a free membership in a discount or consumer rewards club but in fact only the first month's membership was free. Thereafter annual membership costs of $60 to $150 were automatically charged to their credit cards unless they cancelled their membership in time. Unless callers rejected the "free gift" or "free materials," MWI mailed them a membership kit and membership card and charged them the membership fee every year. The membership kit itself contained coupons of nominal value, a membership card, and information about how to make use of the membership by calling MWI and obtaining discount certificates. Members, including Plaintiffs, were sent nothing other than the membership kit.

Plaintiff Sanford was charged $72 in 1999 and $84 again in January, 2000. After she disputed the 2000 charge, MWI refunded $84 but not the $72 charge. Plaintiffs Preston and Rita Smith were charged $72 on March 5, 1999, $95.88 on December 27, 1999, $84 on December 6, 2000, $95.88 on December 27, 2000, and $59.40 for MWI 24-Hour Protect on December 27, 2000.

MWI's involvement in the alleged scheme consisted of preparing the script for this sales pitch and providing it to West, mailing the membership kit, and charging Plaintiffs' credit cards.

### A. Jurisdictional Matters

Plaintiffs have pleaded two federal claims, violations of the EFTA and the Federal Unordered Merchandise Statute. Plaintiffs also seek relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

1  The Declaratory Judgement Act does not, however, confer jurisdiction. *Janakes v. U.S. Postal Serv.*,
2  768 F.2d 1091, 1093 (9th Cir. 1985). Nor can Plaintiffs rely on the Class Action Fairness Act, because
3  this action was filed before its enactment. *Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 686 (9th Cir.
4  2005). Ordinarily if federal claims are dismissed before trial, the Court should decline to exercise
5  jurisdiction over supplemental state-law claims as well. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S.
6  343, 350 n.7 (1988) ("if the federal claims are dismissed before trial . . . the state claims should be
7  dismissed as well") (internal quotation omitted); *see also* 28 U.S.C. § 1367(c).

8  **B.    EFTA**

9  Among other arguments, Defendant MWI points out the EFTA does not apply to credit
10 transactions. (Mem. of P.&A. in Supp. of Mot. to Dismiss ("Mot. to Dismiss") at 5:6–6:20.) This
11 point is well-taken. The EFTA applies to transfers involving a consumer's "account," which in turn
12 is defined as a "demand deposit, savings deposit, or other asset account . . . ." 15 U.S.C. § 1693a(2)
13 & (6); *see also Wike v. Vertrue, Inc.*, 2008 WL 2704364, slip op. at *8 (M.D.Tenn, July 8, 2008)
14 (holding that because plaintiff used a debit card rather than a credit card, the transaction was covered
15 by the EFTA). In the context of this case, this means Plaintiffs may not bring their EFTA claim based
16 on charges to their credit cards, although a plaintiff whose debit card was charged (and thus, whose
17 asset account was charged) could do so, assuming other requirements were met.

18 Plaintiffs do not contest this point, but argue because some members of the putative class paid
19 with debit cards, this claim can survive. (Opp'n to Mot. to Dismiss, at 7:15–25.) Because Plaintiffs'
20 claim does not come within the protection of the EFTA, however, it is clear Plaintiffs' claims must
21 be dismissed. It is likewise clear those members of the putative class whose credit cards were charged
22 cannot maintain a claim under the EFTA.

23 MWI also argues Plaintiffs' claims under the EFTA are time-barred. Plaintiff Sanford first
24 filed her complaint on March 28, 2002. MWI points out claims under EFTA must be brought within
25 one year of the date of the occurrence of the violation. 15 U.S.C. § 1693m(g).

26 In response, Plaintiffs argue that claims of members of the putative class may not be time-
27 barred. They also argue the statute of limitations should be equitably tolled due to MWI's fraudulent
28 concealment. (Opp'n to Mot. to Dismiss at 11:15–13:16.) The alleged concealment consisted of

disguising the nature of the transaction in the course of the telephone call, disguising the nature of the transaction in credit card or bank statements, mailing the membership materials in generic bulk mail envelopes so the importance of the material would not be recognized, and developing a script to use in responding to consumers' inquiries about charges.[1]

Plaintiff Sanford says her second annual membership was refunded on February 29, 2000. Therefore, even assuming MWI took steps to conceal the nature of the transaction, she had actual notice at least as early as that date. Facts showing Plaintiff Sanford's EFTA claims are time-barred thus appear on the face of the FAC.

Whether tolling of the Smiths' EFTA claim is time-barred is an open question. The FAC does not indicate when the Smiths learned of the charges, so it is unclear whether tolling might be appropriate. The issue of whether putative class members' claims are time-barred likewise depends on the resolution of factual questions and is not appropriate for determination at this stage.

Because Plaintiffs' asset accounts were not involved in the transactions at issue here, and because Plaintiff Sanford's EFTA claims are time-barred, Plaintiffs' EFTA claims are **DISMISSED**.

### C.   Unordered Merchandise Statute

In *Kipperman v. Academy Life Ins. Co.*, 554 F.2d 377, 380 (9th Cir. 1977), the Ninth Circuit held the Unordered Merchandise Statute could give rise to a private right of action. MWI has argued intervening Supreme Court precedent has cast doubt on this holding, however (Mot. to Dismiss at 10:11–14:16 (citing authority)), and this Court therefore need not and should not follow this precedent. *See Wisneiwski v. Rodale, Inc.*, 406 F. Supp. 2d 550, 557 (E.D.Pa. 2005) (holding § 3009 created no private right of action) (citing *Alexander v. Sandoval*, 532 U.S. 275 (2001)); *Randolph v. Oxmoor House, Inc.* 2002 U.S. Dist. LEXIS 26289 (W.D. Tex., Sept. 30, 2002).

While the Eastern District of Pennsylvania has said the holding of *Kipperman* is "clearly not appropriate today" in light of *Sandoval* and other intervening rulings by the Supreme Court, 406 F. Supp. 2d at 557, the Ninth Circuit recently reaffirmed its holding in *Kipperman*, in the course of explaining why nominal damages for violations of the Unordered Merchandise Statute (also referred

---

[1] Plaintiffs only mentioned the script in their opposition to the Mot. to Dismiss; it is not alleged in the FAC.

1  to as the Postal Reorganization Act) are unavailable. *Lindner v. Reader's Digest Ass'n, Inc.*, 231 Fed.
2  Appx. 663, 664 (9th Cir. 2007) (citing *Kipperman*, 554 F.2d at 380 for the principle that a recipient
3  of unordered merchandise may pursue a private cause of action for restitutionary damages). *See also*
4  *UMG Recordings, Inc. v. Augusto*, 558 F. Supp. 2d 1055, 1064 (C.D.Cal. 2008) (noting *Wisniewski*'s
5  criticism of *Kipperman* but finding *Kipperman* remained good law in this Circuit). While this
6  discussion was germane to the holdings of *Lindner* and *UMG*, it is less clear it constitutes part of the
7  holdings. As explained below, however, the Court need not resolve the doubtful issue of *Kipperman*'s
8  viability.

9       Plaintiffs' more immediate problem is that the Unordered Merchandise Statute governs only
10 merchandise, and not everything that can be mailed falls within this category. In *Kipperman*,
11 intangibles evidenced by written materials — there, an insurance policy or, arguably, an offer to sell
12 insurance — were not found to be "merchandise" as contemplated in the Statute. 554 F.2d at 380–81.
13 *See also Kashelkar v. Rubin & Rothman*, 97 F. Supp.2d 383, 395 (S.D.N.Y. 2000) (holding check sent
14 to plaintiff was not merchandise, but rather was offer to open a line of credit).

15      Plaintiffs argue their claims are like that presented in *Crossley v. Lens Express, Inc.*, 2001 WL
16 650728 (W.D.Tex., Feb. 12, 2001), because in that case, the plaintiff received contact lenses plus
17 unsolicited enrollment in a program under which he would be sent more contact lenses. *Crossley* is
18 inapposite, however, because the plaintiff was sent contact lenses, which qualify as merchandise.
19 Plaintiffs also argue the definition of merchandise includes the documents they were sent because the
20 documents were movable objects involved in trade or traffic and passed from hand to hand by purchase
21 and sale. (Opp'n to Mot. to Dismiss at 16:5–22.) While Plaintiffs are correct that documents are a
22 thing that could be offered for sale (*id.* at 16:20–22), the membership kit is not in fact the subject of
23 the offer; rather, the pleadings make clear what MWI is selling is opportunities to buy other goods at
24 a discount or to receive rebates or other rewards for purchase of those other goods.

25      In the absence of other indications of meaning, the Court looks to the ordinary meaning of the
26 term and may rely on a dictionary. *Cabazon Band of Mission Indians v. Smith*, 388 F.3d 691, 698 (9th
27 Cir. 2004) (citations omitted). Black's Law Dictionary defines merchandise as:
28 / / /

> 1. In general, a movable object involved in trade or traffic; that which is passed from hand to hand by purchase and sale. 2. In particular, that which is dealt in by merchants; an article of trading or the class of objects in which trade is carried on by physical transfer; collectively, mercantile goods, wares or commodities, or any subjects of regular trade, animate as well as inanimate.

Black's Law Dictionary 1008 (8th ed. 2004), and notes, parenthetically:

> This definition generally excludes real estate, ships, intangibles such as software, and the like, and does not apply to money, stocks, bonds, notes, or other mere representatives or measures of actual commodities or values.

The membership kit contained nothing that was the subject of sale by West or MWI; rather, it contained documents enabling members to make use of MWI's rewards program or discount purchasing program, a card evidencing membership in the program, and coupons constituting offers to make purchases at a discount. (FAC, ¶¶ 23, 26, 31–32, 42–43.) In other words, the object of the trade was the membership; the membership kit was merely incidental to the sale of the membership.

For this reason, Plaintiffs' claims under the Unordered Merchandise Statute are **DISMISSED**. Class claims are likewise **DISMISSED**. Because it is clear Plaintiffs cannot save this claim by amendment, they will not be given leave to amend.

### D. Supplemental Jurisdiction

Because Plaintiffs' federal claims are being dismissed, the Court will decline to exercise jurisdiction over their state-law claims. *Carnegie-Mellon*, 484 U.S. at 350 n.7.

### E. Class Allegations

As discussed above, the only remaining federal claim that might be brought by a class member is an EFTA claim within the limitations period by a class member whose debit card was charged. Because all Plaintiffs' claims are being dismissed, they cannot serve as class representatives. Because a class has been certified in the state court proceeding, however, it is possible a member of the class would be able to substitute in as a named Plaintiff.

When named plaintiffs' claims have been dismissed for lack of jurisdiction before class certification, dismissal of the complaint is appropriate. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003). Likewise, when the named plaintiffs' claims have been dismissed for failure to state a claim before a motion for certification has been filed, courts will ordinarily dismiss the entire action without permitting the substitution of additional named plaintiffs. *See, e.g.*,

*Bailey v. Cumberland Cas. & Surety Co.*, 180 Fed. Appx. 862, 865 (11th Cir. 2006); *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 326 (S.D.N.Y. 1999) (denying as premature named plaintiff's motion to appoint additional class representatives, on the grounds that the class had not yet been certified and therefore did not yet exist). *But see Nat'l Fed'n of the Blind v. Target Corp.*, 2008 WL 54377, slip op. at *1 (N.D.Cal., Jan. 3, 2008) (noting that, after granting defendant's motion for summary judgment, court had granted the putative class 30 days to name a new class representative) (distinguishing *Lierboe*).

In this case, Plaintiffs were not injured in ways actionable under federal law. This is not a case where their claims became moot during the pendency of the action; rather, they never had any federal claims and therefore could not bring supplemental state claims. No motion for certification has been filed, nor has any other putative class member's motion to intervene as a named Plaintiff been filed, although the briefing makes clear Plaintiffs and their counsel knew dismissal of their claims was a possibility. Because Plaintiffs were never qualified to represent the putative class, the Court would not grant a motion to intervene at this point even if the proceedings were stayed to allow such a motion to be filed. *See Lidie v. State of California,* 478 F.2d 552, 555 (9th Cir. 1973) (holding that, in contrast to a situation where named plaintiffs' claims become moot during the pendency of proceedings, "where the original plaintiffs were never qualified to represent the class, a motion to intervene represents a back-door attempt to begin the action anew, and need not be granted").

The Court has taken notice of the fact that claims against West are being pursued as a class action in state court, and also notes that because the pendency of this action tolled the statute of limitations for individual claims, mitigating prejudice to members of the putative class. *Wright v. Schock*, 742 F.2d 541, 545 (9th Cir. 1984) (citing *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 352–53 (1983)). Plaintiffs have also represented a global settlement in the state court cases has received preliminary approval. (Pls.' Mot. to Amend at 1:2–8.)

The Court will therefore not follow the *Nat'l Fed'n for the Blind* approach and entertain motions to intervene, but rather will follow the Eleventh Circuit's approach in *Bailey* and dismiss the action in its entirety.

/ / /

1 / / /

### F. Pending Motion to Amend

Plaintiffs' pending motion to amend explains they agreed in the state action to amend their complaint in this Court to remove any suggestion that Plaintiffs are pursuing claims against West in this Court. (Pls.' Mot. to Amend at 1:9–12.) Plaintiffs represent that if amendment is not permitted, West will rescind the settlement. (*Id.* at 1:13–17.) To avoid any needless impediment to the settlement of the state court cases, the Court **DEEMS** the FAC amended as proposed, although it is being dismissed.

### IV. Conclusion and Order

For reasons explained above, the federal claims of Plaintiffs Sanford and Preston and Rita Smith are **DISMISSED WITH PREJUDICE** and their supplemental state claims are **DISMISSED WITHOUT PREJUDICE BUT WITHOUT LEAVE TO AMEND**. The FAC is **DISMISSED WITHOUT PREJUDICE BUT WITHOUT LEAVE TO AMEND**. Plaintiffs' pending motion to amend is **GRANTED IN PART** as noted above, but is otherwise **DENIED AS MOOT**. All other pending motions are **DENIED AS MOOT** and all pending dates are **VACATED**.

**IT IS SO ORDERED**.

DATED: September 29, 2008

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge